IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SIMON P. DEARN, on behalf of himself and a class of similarly situated individuals | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 4:26-cv-00469 |
| v. | ) ) | **Jury Trial Demanded** |
| CITY OF ST. LOUIS | ) ) | |
| Defendants. | ) ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

### INTRODUCTION

1.     This is a civil rights class action challenging the City of St. Louis's covert, suspicionless, and continuous video surveillance of the curtilage of residential homes through a citywide network of concealed cameras.

2.     The City has deployed hundreds of networked, concealed cameras throughout its residential alleys. The cameras are not trained merely on the public right-of-way. They are positioned and angled to capture, continuously and around the clock, the curtilage of private homes: the yards, gates, driveways, and points of ingress and egress where residents and their families live their daily lives. The cameras record who lives in each home, when residents come and go, what they do in their yards, and who visits them and for how long.

3.     The cameras operate without warrants, without individualized suspicion, and without notice to the residents they record. Their footage is retained, pooled, and searchable, allowing the City to reconstruct the movements, routines, and associations of residents across the

1

City and over time. The system is not a single camera aimed at a single suspect. It is a permanent, population-wide surveillance dragnet.

4.      The Fourth Amendment does not permit the government to subject the area immediately surrounding the home to continuous, warrantless, technological surveillance of this kind. In *Carpenter v. United States*, 585 U.S. 296 (2018), the Supreme Court recognized that the Constitution limits systematic, long-term surveillance that comprehensively documents a person's movements and activities, even where individual moments might be visible to the public. What the City has built is the residential, home-focused analog of the location tracking held to be a search in *Carpenter*, aggravated by its focus on the constitutionally protected curtilage of the home.

5.      Plaintiff Simon P. Dearn brings this action on behalf of himself and all residents of the City whose residential curtilage is recorded by the City's alley cameras. He seeks a declaration that the continuous warrantless recording of residential curtilage is unconstitutional, and an injunction requiring the City to cease that recording and to reposition, reconfigure, or mask its cameras so that they capture only the public right-of-way and no longer surveil the curtilage of residents' homes.

## SCOPE OF THE ACTION

6.      This action challenges only the City's warrantless, continuous recording and retention of the curtilage of residential property. Plaintiff does not challenge, and seeks no order concerning, the City's authority to record or monitor the public alleys or public rights-of-way themselves.

7.      Plaintiff does not seek to enjoin, stay, restrain, or otherwise interfere with any pending municipal, criminal, or quasi-criminal proceeding. Plaintiff does not seek the suppression

or exclusion of any evidence in any such proceeding and does not ask this Court to adjudicate the validity of any citation, charge, or conviction. The relief Plaintiff seeks is wholly prospective: an end to the warrantless surveillance of residential curtilage going forward.

8.      The constitutional violation Plaintiff challenges is independent of, and does not depend upon, the lawfulness of any individual citation or prosecution. A determination that the continuous warrantless recording of residential curtilage is unconstitutional would neither require nor imply any ruling concerning the City's authority to record the public right-of-way, where any conduct underlying any pending municipal charge occurred.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), because this action arises under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, because those claims are so related to the federal claims that they form part of the same case or controversy.

11.     Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within the Eastern District of Missouri, Eastern Division, and Defendant City of St. Louis is located within this District.

## PARTIES

12.     Plaintiff Simon P. Dearn is a resident of the City of St. Louis, Missouri, and owns and resides at a single-family home in the Dutchtown neighborhood of the City. The City's alley cameras presently record the curtilage of Plaintiff's home and continue to do so as of the filing of this Complaint.

13.    Defendant City of St. Louis is a municipal corporation organized under the laws of the State of Missouri. The City operates through its agents, employees, and officials, including its police and code enforcement departments. The City is a "person" within the meaning of 42 U.S.C. § 1983. The City's principal office is located at 1200 Market Street, St. Louis, Missouri 63103.

## FACTUAL ALLEGATIONS

### *The City's Covert Residential Camera Network*

14.    Plaintiff owns and resides at a single-family home in the Dutchtown neighborhood of the City. Like most homes in the City, Plaintiff's residence abuts an alley that residents of the block use to enter and exit their property and where the City's dumpsters and utility poles are maintained.

15.    In the alley behind Plaintiff's home, the City has installed one or more concealed surveillance cameras positioned and angled to record Plaintiff's property, including his yard, driveway, gate, and points of ingress and egress. The cameras continuously and perpetually record Plaintiff's movements on and around his own residential property, including while he mows his lawn, walks his dog, and enters and exits his property through its gate and driveway.

16.    The City has deployed a network of such cameras in alleys throughout the City. The cameras are mounted on poles and are designed to be inconspicuous, resembling small game cameras or similar devices. They bear no signage, notice, or disclosure indicating surveillance is occurring.

17.    The cameras are oriented to surveil not only the alleys and dumpsters but the residential properties adjoining them, including the yards, gates, driveways, and points of ingress and egress of residents' homes. They operate continuously, recording all activity within their field of view around the clock, every day, indefinitely.

4

18.     The cameras are mounted in elevated positions atop utility poles. From that vantage, the cameras capture areas of residents' curtilage, continuously and in detail, that no passerby standing in the alley or on the street could observe.

19.     The City has identified at least some of these cameras as "Spartan cameras" and has placed hundreds of them throughout the City. Upon information and belief, the cameras are networked and centrally accessible, their footage is retained for extended periods, and that footage is pooled and searchable, such that the City can retrieve and review the recorded activity at any camera, for any residence, at any time within the retention period.

20.     Upon information and belief, because the cameras are numerous, networked, and distributed throughout the City's residential alleys, the City can use the system to identify and reconstruct the movements, patterns, routines, and associations of residents over time and across multiple locations, and not merely at a single fixed point.

21.     The City's law enforcement and administrative enforcement agents regularly review the footage without any reasonable suspicion that an offense has occurred prior to review. The City reviews the footage to discover ordinance violations after the fact, rather than to investigate any known or suspected violation.

22.     Because the cameras record the curtilage of homes continuously, the footage reveals intimate details of residents' daily lives, including who resides in each home, the residents' daily routines and schedules, when they are present and absent, what they do in the private areas adjoining their homes, and the identity, frequency, and duration of their visitors.

23.     The City has not obtained warrants, and did not possess any individualized suspicion of criminal or ordinance activity, before deploying or operating any of these cameras. The surveillance is suspicionless and programmatic.

24.     The City has publicly acknowledged that it deployed these cameras throughout the City's alleys to enforce municipal ordinances, including ordinances governing dumpster use and bulk waste disposal. The deployment and operation of the camera network is an official policy of the City.

25.     The City uses footage from these cameras to issue citations, summonses, and fines to residents. The City has refused to remove or reposition the cameras so that they no longer record residential curtilage or track the movements of residents on and around their homes.

26.     The cameras remain in place and continue to record the curtilage of Plaintiff's home and the homes of the members of the Class as of the filing of this First Amended Complaint. Absent injunctive relief, this surveillance will continue indefinitely.

### *Plaintiff's Discovery of the Surveillance*

27.     On or about August 8, 2025, Plaintiff placed two bookcases in the public alley adjacent to his dumpster, in a location accessible to passersby, so that others could take them for free. Within a short time, persons passing through the alley took the bookcases, and none remained.

28.     Weeks later, the City issued Plaintiff a citation for "illegal dumping" based on footage from one of its concealed alley cameras. It was only then that Plaintiff learned that the cameras mounted on utility poles in the City were being used for continuous, warrantless, and covert surveillance of residents and the curtilage of their homes.

29.     Plaintiff does not, in this action, seek any relief concerning that citation or any proceeding arising from it. Plaintiff's claims concern the City's ongoing warrantless surveillance of residential curtilage, which continues regardless of the disposition of any individual citation.

**CLASS ACTION ALLEGATIONS**

30.     Plaintiff brings this action under Federal Rule of Civil Procedure 23(a) and 23(b)(2) on behalf of himself and all persons similarly situated.

31.     The Class is defined as: all persons who own, reside at, or lawfully occupy residential property in the City of St. Louis, a portion of whose curtilage (including any yard, gate, driveway, or point of ingress or egress) is within the field of view of, and is recorded by, a camera operated by the City of St. Louis.

32.     The Class seeks prospective declaratory and injunctive relief only. Plaintiff seeks no monetary relief on behalf of the Class.

*Rule 23(a) Requirements*

33.     **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable. The City has admitted deploying surveillance cameras throughout alleys across the City and has placed hundreds of cameras. Upon information and belief, thousands of residents own, reside at, or occupy residential property whose curtilage is recorded by those cameras.

34.     **Commonality.** There are questions of law and fact common to the Class, including: (a) whether the City's continuous, warrantless recording of residential curtilage through its alley camera network constitutes a search under the Fourth Amendment; (b) whether that surveillance violates Article I, Sections 10 and 15 of the Missouri Constitution; (c) whether the City's program operates as an unconstitutional general search; and (d) whether the Class is entitled to declaratory and injunctive relief.

35.     **Typicality.** Plaintiff's claims are typical of the claims of the Class. Plaintiff owns and resides at a home whose curtilage is continuously recorded by a City alley camera, and his

7

claims arise from the same policy and course of conduct that give rise to the claims of all Class members.

36.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class, and Plaintiff's counsel is experienced in civil rights and class action litigation.

### *Rule 23(b)(2)*

37.     This action is properly maintained under Rule 23(b)(2) because the City has acted and refused to act on grounds that apply generally to the Class, making final injunctive and declaratory relief appropriate respecting the Class as a whole. The legality of the City's curtilage surveillance is a single question common to every Class member, and the relief sought, an end to that surveillance, is indivisible and would benefit all Class members uniformly.

**COUNT I**
**Unreasonable Search: Continuous Warrantless Surveillance of Residential Curtilage**
**(42 U.S.C. § 1983; Fourth and Fourteenth Amendments)**
**Class: Declaratory and Injunctive Relief; Plaintiff Individually: Nominal Damages**

38.     Plaintiff incorporates by reference all preceding paragraphs.

39.     The Fourth Amendment, applied to the States through the Fourteenth Amendment, protects persons against unreasonable searches. A search occurs when the government invades an expectation of privacy that society recognizes as reasonable.

40.     The home and its curtilage receive the most exacting protection under the Fourth Amendment. The curtilage, the area immediately surrounding and associated with the home, is treated as part of the home itself. *Florida v. Jardines*, 569 U.S. 1 (2013); *United States v. Dunn*, 480 U.S. 294 (1987). The areas the City's cameras record, namely the yards, gates, driveways, and points of ingress and egress of residents' homes, lie within or directly abut the curtilage.

41.     The Fourth Amendment limits systematic, long-term surveillance that comprehensively documents a person's movements and activities, even in areas exposed to public view. *Carpenter v. United States*, 585 U.S. 296 (2018); *United States v. Jones*, 565 U.S. 400 (2012) (Sotomayor, J., concurring; Alito, J., concurring in the judgment). The aggregation of individually observable moments into a continuous and permanent record can reveal the privacies of life and constitutes a search. *See Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330 (4th Cir. 2021) (en banc).

42.     The City's program is not the momentary or naked-eye observation of an area visible to a passerby. It is the continuous, automated, and permanent recording of the curtilage of homes, from elevated vantages that capture what no passerby could see, retained and searchable, and aggregated across a citywide network of hundreds of cameras through which the City can reconstruct the routines, movements, and associations of residents over time. That comprehensive, persistent, and suspicionless recording of the area surrounding the home far exceeds any reasonable analog to ordinary observation and invades a reasonable expectation of privacy.

43.     The City's surveillance is conducted without warrants, without judicial authorization, and without any individualized suspicion. It is covert, and residents have no notice that the curtilage of their homes is being recorded and no opportunity to take precautions against it.

44.     The constitutional protection of the home and its curtilage does not depend on a resident's ability to erect physical barriers against an elevated camera. The Fourth Amendment's protections apply equally regardless of a resident's resources.

9

45.    The City's camera program is an official policy of the City and is the moving force behind the constitutional violations alleged. The City is therefore liable under 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

46.    As a direct and proximate result of the City's policy, Plaintiff and all Class members suffer, and will continue to suffer, ongoing violations of their Fourth Amendment rights. Without prospective injunctive relief, these violations will continue indefinitely.

47.    Plaintiff and the Class seek a declaration that the City's continuous warrantless recording of residential curtilage is an unreasonable search in violation of the Fourth and Fourteenth Amendments, and an injunction requiring the City to cease that recording and to reposition, reconfigure, or mask its cameras so that they capture only the public right-of-way. Plaintiff individually seeks nominal damages for the violation of his Fourth Amendment rights, together with attorneys' fees and costs under 42 U.S.C. § 1988.

**COUNT II**
**Unreasonable Search Under the Missouri Constitution**
**(Mo. Const. art. I, §§ 10, 15; Mo. Rev. Stat. § 527.010 et seq.)**
**Class: Declaratory and Injunctive Relief**

48.    Plaintiff incorporates by reference all preceding paragraphs.

49.    This Count is brought under Missouri's Declaratory Judgment Act, Mo. Rev. Stat. § 527.010 et seq., and the Court's equitable authority, and not under 42 U.S.C. § 1983.

50.    Article I, Section 15 of the Missouri Constitution protects persons against unreasonable searches and seizures and is coextensive with the Fourth Amendment. Article I, Section 10 guarantees due process of law.

51.    For the reasons alleged in Count I, the City's continuous, warrantless recording of the curtilage of residents' homes is an unreasonable search under Article I, Section 15, and the analysis under the Missouri Constitution is the same as under the Fourth Amendment.

10

52.     An actual, justiciable, and ripe controversy exists between Plaintiff and the Class, on the one hand, and the City, on the other, concerning the legality of the City's curtilage surveillance under the Missouri Constitution.

53.     Plaintiff and the Class seek a declaration that the City's continuous warrantless recording of residential curtilage violates Article I, Sections 10 and 15 of the Missouri Constitution, together with prospective injunctive relief and an award of attorneys' fees and costs as authorized by law.

## COUNT III
### General Search in Violation of the Fourth and Fourteenth Amendments
### (42 U.S.C. § 1983)
### Class: Declaratory and Injunctive Relief; Plaintiff Individually: Nominal Damages

54.     Plaintiff incorporates by reference all preceding paragraphs.

55.     The Fourth Amendment's condemnation of general warrants and general searches is among its most fundamental protections. The Framers condemned the general search, which authorizes indiscriminate rummaging untethered to any particular person, place, or suspected offense and sweeps up the innocent with the guilty. *Stanford v. Texas*, 379 U.S. 476 (1965).

56.     The City's residential camera network operates as a general search. It subjects every resident whose curtilage adjoins a camera-equipped alley to continuous, warrantless recording, without limitation as to person, time, or suspected activity, and without any particularized suspicion. It is not directed at any identified person or any suspected offense. It sweeps all residents and all activity in the curtilage of their homes into its surveillance indiscriminately, and the City reviews the resulting footage at will to find violations after the fact.

57.     The suspicionless, unparticularized, and indiscriminate character of the City's program independently renders it an unreasonable search under the Fourth and Fourteenth Amendments, separate from the duration and aggregation analysis set forth in Count I.

58.     The City's program is an official policy of the City and is the moving force behind the violations alleged. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

59.     As a direct and proximate result, Plaintiff and the Class suffer ongoing violations of their rights under the Fourth and Fourteenth Amendments. Plaintiff and the Class seek declaratory and injunctive relief, Plaintiff individually seeks nominal damages, and Plaintiff seeks attorneys' fees and costs under 42 U.S.C. § 1988.

**COUNT IV**
**Violation of the Missouri Sunshine Law**
**(Mo. Rev. Stat. §§ 610.010 et seq.)**
**Plaintiff Only**

60.     Plaintiff incorporates by reference all preceding paragraphs.

61.     The Missouri Sunshine Law, Mo. Rev. Stat. §§ 610.010 et seq., grants every person the right to inspect and copy public records held by governmental bodies and requires a public governmental body to act upon a request received by its custodian of records no later than the end of the third business day following the date the request is received. Mo. Rev. Stat. § 610.023.3.

62.     On or about March 10, 2026, Plaintiff submitted a request under the Sunshine Law seeking records relating to the City's deployment and use of alley-mounted surveillance cameras, the volume of citations and fines issued based on those cameras, and the procedures governing their operation.

63.     Plaintiff directed his request to the City's custodian of records, the official designated by the City to receive requests for public records under Mo. Rev. Stat. § 610.023, and the custodian of records received the request.

64.     The records Plaintiff sought are public records within the meaning of the Sunshine Law.

12

65.     More than three business days have passed since the custodian of records received Plaintiff's request. The City has not produced the requested records, has not acknowledged the request, has not denied it in writing, and has asserted no exemption or other basis for any failure to respond.

66.     Upon information and belief, the City's failure to respond was a knowing violation, and a purposeful violation, of the Sunshine Law within the meaning of Mo. Rev. Stat. § 610.027.

67.     Plaintiff seeks an order compelling the City to produce all responsive records, together with civil penalties, attorneys' fees, and costs as provided by Mo. Rev. Stat. § 610.027.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Simon P. Dearn, on behalf of himself and the Class, respectfully requests that the Court:

A.     Certify the Class under Federal Rule of Civil Procedure 23(a) and 23(b)(2), appoint Plaintiff as class representative, and appoint the undersigned as class counsel;

B.     Declare that the City's continuous, warrantless recording and retention of the curtilage of residential property through its alley camera network violates the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 15 of the Missouri Constitution;

C.     Enter a permanent injunction requiring the City to cease the continuous warrantless recording and retention of residential curtilage and to reposition, reconfigure, or mask its alley cameras so that their fields of view capture only the public right-of-way and no longer record the curtilage of residential property, and, as to any camera that cannot be so configured, to remove it;

D.     Award Plaintiff, individually, nominal damages for the violation of his constitutional rights;

13

E.	Order the City to produce all records responsive to Plaintiff's Sunshine Law request and award civil penalties under Mo. Rev. Stat. § 610.027;

F.	Award Plaintiff reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and Mo. Rev. Stat. § 610.027; and

G.	Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and the Seventh Amendment to the United States Constitution, Plaintiff demands a trial by jury on all claims so triable.

Dated: June 22, 2026                                    Respectfully submitted,

By: /s/ Alicia I. Dearn
ALICIA I. DEARN # 64623
4428 Louisiana Ave
St. Louis, Missouri 63111
P: (314) 887-1100
E: Notices@DearnLaw.com

Attorney for Plaintiff Simon P. Dearn and the class of similarly situated individuals